Joann **LEMMON** f/k/a JoAnn Coalson, Plaintiff,

v.

**LINCOLN PROPERTY CO.,** a foreign corporation, Defendant.

No. 6:03–CV–1744–ORL–28J.

United States District Court, M.D. Florida, Orlando Division.

Feb. 23, 2004.

Stephen C. Bullock, Esq., Brannon, Brown, Haley, Robinson & Bullock, P.A., Lake City, FL, for Plaintiff.

Michael Gregory Prendergast, Esq., Amy Heather Reisinger, Esq., Coffman, Coleman, Andrews & Grogan, P.A., Jacksonville, FL, for Defendant.

**ORDER**

ANTOON, District Judge.

JoAnn Lemmon formerly known as JoAnn Coalson ("Ms. Lemmon"), originally filed a civil action against her former employer, Lincoln Property Company ("Lincoln"), in the Eighteenth Judicial Circuit in and for Seminole County, Florida. Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and Local Rule 4.02, Lincoln removed the action to this court. Ms. Lemmon alleges that she was discriminated against because of her age in violation of the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 *et. seq.* This case is currently before the Court on Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. 7, filed December 15, 2003), in response to which Ms. Lemmon has filed Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. 14, filed January 5, 2004). Upon consider-ation of the record in this matter and pertinent case law, and as more specifically set forth below, the Court concludes that Lincoln's Motion shall be granted.

## I. Factual Background

Ms. Lemmon was employed by Lincoln from February 2002 until February 2003.(Doc. 2, filed December 8, 2003). It is undisputed that on two occasions, once on the date she was hired and again in January of 2003, Ms. Lemmon signed forms titled "Employee Handbook Acknowledgment and Agreement to Arbitrate." (Doc. 17, Exhibits A and B). The provision of the first agreement at issue in this case states:

> By signing this receipt of Handbook acknowledgment, I agree that any claim dispute or controversy between myself and the Company shall be submitted to and determined exclusively by binding arbitration in accordance with [Lincoln's] policy as described in the Handbook. I understand that by agreeing to the binding arbitration provision of the Handbook, both the employee and the company give up rights to trial by jury.

(Doc. 17, Exhibit A). The second agreement is identical to the first with the exception that it contains additional language whereby Ms. Lemmon agreed that she had read Lincoln's arbitration policy. (Doc. 17, Exhibit B).

## II. Legal Discussion

■ Ms. Lemmon claims that the arbitration agreement she entered into with Lincoln is invalid and unenforceable. Ms. Lemmon bases part of her conclusion on the allegation that the agreement is vague and does not properly set forth the claims that would be covered by the agreement

so as to generally and fairly inform the employee that it covers statutory claims. (Doc. 14, at 5). The Court finds this argument unpersuasive. In support of her claim, Plaintiff cites *Paladino v. Avnet Computer Technologies., Inc.,* which involved an arbitration agreement whereby employees agreed to submit all claims to arbitration, but which also stated, "The arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages." 134 F.3d 1054, 1056 (11th Cir.1998). The three judge panel agreed that the language prevented the district court from compelling arbitration but disagreed as to whether it covered Title VII claims. *Id.* Chief Judge Hatchett found that the confusing language of the agreement failed to give the employee proper notice that Title VII claims would be covered. *Id.* at 1059. Judges Cox and Tjoflat believed that the agreement in fact covered Title VII claims, but was nonetheless unenforceable because the limitation on damages deprived employees of any meaningful relief. *Id.* Neither reading of *Paladino,* however, prevents this Court from compelling arbitration. Unlike the agreement in *Paladino,* the agreement at issue here does not contain any limitation of remedies or otherwise ambiguous language that might make the agreement unenforceable.

The Eleventh Circuit has made it clear that an arbitration agreement need not specifically set out each and every claim that is covered by the agreement. *Brown v. ITT Consumer Fin. Corp.,* 211 F.3d 1217, 1222 (11th Cir.2000). *Brown* involved an agreement that used language that in the court's opinion was "unequivocal and all-encompassing." *Id* at 1221. The agreement stated that "any dispute between them or claim by either against

the other" would be resolved by arbitration, 211 F.3d at 1220, and the court found that "[b]y using this inclusive language, the parties agreed to arbitrate any and all claims against each other, with no exceptions. An arbitration agreement is not vague solely because it includes the universe of the parties' potential claims against each other." *Id.* at 1221. Likewise, the agreement at issue here contains broad, all-inclusive language that would cover any claim or dispute that may have arisen between Ms. Lemmon and Lincoln, including those arising under the Florida Civil Rights Act.

■ Ms. Lemmon's next argument is that no arbitration agreement between her and Lincoln exists because the two forms she signed only acknowledge that the arbitration agreement is contained in the employee handbook. Ms. Lemmon then contends that Lincoln reserved the right to modify the handbook, which makes the agreement unenforceable. The pertinent language of the agreement reads, "I understand that the Handbook will be updated from time to time and that I will be responsible for receiving and reading any revisions." (Doc. 17, Exhibits A and B). Ms. Lemmon cites *Dumais v. American Golf Corp.,* 299 F.3d 1216 (10th Cir.2002), but that case is distinguishable. Like the agreement in *Paladino,* the *Dumais* agreement contained conflicting provisions. *Id.* at 1217. The plaintiff in *Dumais* signed a handbook acknowledgment form that allowed the employer to modify any provision in the handbook with the exception of the employees' at-will status. *Id.* The problem arose because there was an earlier provision in the handbook that stated the employer could modify any provisions except the employees' at-will status *and* the arbitration agreement. *Id.* The

10th Circuit agreed with the district court's conclusion that these conflicting provisions were ambiguous and "reasonably and fairly susceptible to different constructions." *Id.* at 1218. Again, the present case does not involve any conflicting language that would make the agreement unenforceable or language that would allow Lincoln to unilaterally alter the agreement to arbitrate. *Dumais* is also distinguishable because, unlike here, the arbitration agreement was actually contained in the handbook and not on the acknowledgment form.[1] Even though Lincoln retained the right to alter the handbook, which contained the procedures detailing how arbitration would work, they could not unilaterally alter the agreement to arbitrate.

This case is more closely analogous to *Patterson v. Tenet Healthcare Inc.*, 113 F.3d 832 (8th Cir.1997), which involved an acknowledgment form similar to the one signed by Ms. Lemmon. There, the plaintiff signed a form acknowledging receipt of the handbook and agreeing to arbitrate any complaints arising out of her employment. *Id.* at 834–35. The court found that even though the handbook was not a contract, the arbitration language in the acknowledgment formed a binding contract. *Id.* at 835.

■ If Ms. Lemmon had decided to bring her claims before an arbitrator, Lincoln could not have avoided arbitration because the agreement to arbitrate created mutuality of obligation. "Where both parties are bound by contractual provisions, mutuality exists and those terms are held enforceable." *Albert v. Nat'l Cash Register Co.*, 874 F.Supp. 1324, 1326 (S.D.Fla.1994). Ms. Lemmon entered into a binding agreement to arbitrate which neither she nor Lincoln can avoid.

### III. Conclusion

Finding that the plaintiff entered into a valid, unambiguous agreement to arbitrate all claims, including those under the Florida Civil Rights Act, it is **ORDERED** and **ADJUDGED** that:

1. Defendant's Motion to Compel Arbitration and Stay Proceedings (Doc. 7, filed December 15, 2003) is **GRANTED** as follows:

a. The parties are hereby Ordered to submit this dispute to arbitration pursuant to the provisions of the arbitration agreement entered into by the parties.

b. All proceedings in this action shall be stayed pending arbitration of the parties' dispute.

---

1. The plaintiff in *Dumais* also signed a "We Can Work It Out" form that purportedly contained another arbitration agreement. The court did not consider this form because it found that the handbook, by its terms, constituted the entire contract and superceded all other documents. 299 F.3d at 1219.